JUSTICE REGNIER
delivered the Opinion of the Court.
¶1 M. Duane Young and Nancy Young (“the Youngs”) appeal from the July 25, 2000, Findings of Fact, Conclusions of Law and Order of the Montana Twenty-Second Judicial District Court, Big Horn County, permanently enjoining flood irrigation practices on their property. Additionally, the Youngs appeal from the District Court’s October 4, 2000, Order denying their Rule 59(g), M.R.Civ.P., motion to alter or amend the judgment. We reverse.
¶2 We find one issue dispositive of this appeal:
¶3 Did the District Court abuse its discretion when it permanently enjoined lawful flood irrigation practices on the Youngs’ property?
FACTUAL AND PROCEDURAL BACKGROUND
¶4 The Youngs own thirteen acres of real property near Hardin, Montana, which they purchased in 1988. Floyd Warren, Inc., leases approximately four acres of the Youngs’ property for crop production. The Youngs and their predecessors in interest have irrigated the four acre parcel for decades. Actual irrigation of the property is sporadic due to the lack of water and the type of crop selected for production. The annual income derived by the Youngs from crop production on their irrigated parcel of property is approximately $400.00.
¶5 In 1992, Jon C. Wells and Candy A. Wells (“the Wells”) purchased *421 real property and built a home adjacent to the Youngs’ irrigated parcel of property. Between the summer of 1994 and the fall of 1998, the Youngs’ property was flood irrigated three times. On each occasion, the Wells thereafter experienced flooding in the crawl space of their home. The Wells filed suit against the Youngs in the District Court claiming damages in excess of $80,000.00 based on tort theories of negligence, nuisance, and trespass. In addition, the Wells sought a permanent injunction prohibiting future flood irrigation on the Youngs’ property.
¶6 Following a bench trial, the District Court entered its Findings of Fact, Conclusions of Law and Order on July 25, 2000. The specific findings of the District Court are critical to our analysis and will therefore be explained in some detail.
¶7 The District Court found that the flood irrigation practices employed on the Youngs’ property are “typical of the practice of irrigators who utilize flood irrigation on crops.” Moreover, the District Court determined that it is unlikely that the flood irrigation practices conducted on the Youngs’ property caused a rise in groundwater so substantial as to cause the flooding experienced by the Wells. The District Court found that the “most plausible and credible explanation” of the flooding experienced by the Wells is the existence of a subsurface pathway or conduit, “most likely” an abandoned United States Bureau of Indian Affairs (“BIA”) ditch, extending from the head ditch on the Youngs’ property to the Wells’ home. Despite entering the prior findings, the District Court also found that the “saturation of the soils around the Wells’ residence and the entry of water into the Wells’ crawl space occurred as a result of the flood irrigation practices used in irrigating the Youngs’ field in 1994 and in 1998.” The District Court determined that the conduit or possibly other conditions responsible for the water flooding the Wells’ property existed prior to the Wells’ purchase of the property and the construction of their home.
¶8 Since the irrigation practices on the Youngs’ property predated the construction of the Wells’ home, the District Court reasoned that § 85-7-2212(2), MCA, precluded the Wells from recovering damages. Under this analysis, the Wells could not recover on their trespass actions pursuant to § 85-7-2212(2), MCA. Similarly, the District Court concluded that the Wells’ nuisance claim was barred by § 27-30-101(3), MCA. The District Court disposed of the negligence claim by focusing on the Wells’ failure to establish that the Youngs’ flood irrigation practices breached the standard of care of a reasonable farm irrigator engaged in flood irrigation.
¶9 Nonetheless, the District Court permanently enjoined the Youngs *422 from irrigating their property. The District Court determined that future irrigation without modification to the head ditch would result in “an unreasonable and substantial risk of continuing harm and irreparable injury to the Wells’ property.” Consequently, the District Court concluded that the imposition of a permanent injunction preventing flood irrigation on the Youngs’ property was justified until said irrigation practices did not result in the saturation of soil on the Wells’ property and the entry of water into the Wells’ home.
¶10 After entry of the District Court’s July 25, 2000, Order, the Youngs moved the District Court to alter or amend its judgment pursuant to Rule 59(g), M.R.Civ.P. The Youngs requested that the permanent injunction be vacated based upon the court’s determination that their irrigation practices were lawful. On September 25,2000, the District Court conducted a hearing on the Youngs’ motion. On October 4, 2000, the District Court entered its Order denying the Youngs’ motion.
¶11 The District Court relied on our decision in Madison Fork Ranch v.L&B Lodge Pole Timber Products (1980), 189 Mont. 292, 615 P.2d 900, to support its conclusion that injunctive relief is available as a remedy to enjoin lawful activity when equity so warrants. The District Court noted that our holding in Madison Fork relied strictly on equitable principles of law and did not cite § 27-19-102, MCA. Nonetheless, the court determined that its imposition of the permanent injunction in this case comported with the procedures outlined in § 27-19-102, MCA. The court found that the continued use of flood irrigation on the Youngs’ property would result in immediate, irreparable and substantial harm to the Wells’ home, and thus the need to protect the Wells from substantial loss which they may potentially endure as a result of the irrigation. The court noted that the Youngs net only nominal income from such irrigation. The Youngs appeal.
STANDARD OF REVIEW
¶12 The grant or denial of an injunction is within the discretion of the district court and will not be reversed absent an abuse of that discretion. Engel v. Gampp, 2000 MT 17, ¶ 33, 298 Mont. 116, ¶ 33, 993 P.2d 701, ¶ 33 (citation omitted). Moreover, the granting of an injunction is an equitable remedy. Talley v. Flathead Valley Community College (1993), 259 Mont. 479, 491, 857 P.2d 701, 708 (citation omitted). Therefore, we review both questions of law and questions of fact arising upon the evidence presented in the record to determine if the court abused its discretion. See Section 3-2-204(5), *423 MCA. Also see Boz-Lew Builders v. Smith (1977), 174 Mont. 448, 452, 571 P.2d 389, 391.
DISCUSSION
¶13 Did the District Court abuse its discretion when it permanently enjoined lawful flood irrigation practices on the Youngs’ property?
¶14 The District Court determined that the imposition of a permanent injunction was warranted in this case pursuant to § 27-19-102, MCA, and as a matter of equity. Accordingly, we must decide whether the District Court abused its discretion when it permanently enjoined flood irrigation practices on the Youngs’ property as both a matter of law and equity. We will first examine whether the District Court complied with the procedures stated in § 27-19-102, MCA, and then, in turn, address whether the District Court abused its discretion in its efforts to achieve an equitable result.
¶15 The Youngs claim that neither law nor equity permits the imposition of a permanent injunction precluding lawful irrigation practices. The Youngs contend that the trial court applied an incorrect legal standard when it permanently enjoined their irrigation practices, which it initially determined were lawful and did not cause the Wells’ damages. The Youngs assert that the applicable Montana statute governing the imposition of permanent injunctions, § 27-19-102, MCA, requires a breach of an obligation as a prerequisite to the imposition of a permanent injunction. The Youngs point out that the District Court did not expressly find that they breached a duty or an obligation owed to the Wells. Likewise, the Youngs argue that a breach of the duty imposed by § 28-1-201, MCA, not to damage the property of another, cannot be implied from the court’s findings. The Youngs maintain that if such a finding were implied, it would conflict with the court’s explicit findings and conclusions that: (1) they did not breach the standard of care of a reasonable farm irrigator engaged in flood irrigation, (2) the Wells’ trespass and nuisance actions are barred by § 85-7-2212(2), MCA, and (3) the flooding experienced by the Wells was caused by an underground conduit constructed by the BIA.
¶16 The Wells respond that the District Court did not abuse its discretion, under legal or equitable grounds, when it imposed a permanent injunction. While they do not dispute that a breach of an obligation is a prerequisite to the imposition of a permanent injunction pursuant to § 27-19-102, MCA, they assert that the statute serves only as “mere guidelines” to a district court when issuing permanent injunctions pursuant to its equitable powers. Moreover, the Wells observe that the District Court necessarily complied with the *424 procedures set forth in § 27-19-102, MCA, since it specifically found that the Youngs breached the obligation imposed by § 28-1-201, MCA, when their irrigation practices caused “immediate, irreparable, and substantial harm” to the Wells’ home. Further, the Wells assert that if not expressly stated, an implied finding exists that the Youngs breached the duty imposed by § 28-1-201, MCA, as such a finding is consistent with the District Court’s express findings.
¶17 While the parties agree that a district court must find a breach of an obligation by the party sought to be enjoined prior to imposing a permanent injunction, pursuant to § 27-19-102, MCA, they disagree over whether the District Court expressly or impliedly found that the Youngs breached the obligation imposed by § 28-1-201, MCA. Accordingly, in determining whether the District Court abused its discretion, we look to the District Court’s findings to determine whether it found that the Youngs breached such obligation.
¶18 The District Court specifically found in its July 25, 2000, Order that:
The flood irrigation practice utilized on the Youngs’ field is typical of the practice of irrigators who utilize flood irrigation on crops. [Finding # 13]
The field ditches on the Youngs’ field are of the correct size, located at or near the high point of the field which is necessary to irrigate the field and situated in a manner to convey water. [Finding # 14]
Expert testimony established that it is unlikely that the flood irrigation conducted by Mr. Warren and Mr. Young caused a rise in groundwater so substantial as to cause the flooding experienced by the Wells. The most plausible and credible explanation of the flooding experienced by the Wells is the existence of a subsurface pathway or conduit from the head ditch on the Youngs’ property to the home on the Wells’ property. [Finding # 26]
Conduits can result from decaying tree roots, old utility paths, and/or old abandoned ditches. The evidence indicates that all three possible sources exist on the Wells’ property. [Finding # 27] The most likely conduit is an abandoned BIA ditch which ruis to or in close proximity to the Wells’ home. The BIA ditch was altered due to highway construction in 1961 with part of the ditch forming the head ditch now on the Youngs’ property and the abandoned portion of the ditch traveling across the Wells’ property. [Finding #28]
The District Court then expressly concluded in its July 25,2000, Order *425 that: (1) the Wells’ trespass actions are precluded by § 85-7-2212(2), MCA, (2) the Wells’ nuisance action is precluded by § 27-30-101(3), MCA, and (3) the Youngs did not breach the standard of care of a reasonable farm irrigator engaged in flood irrigation.
¶19 Further, in its October 4, 2000, Order, the District Court stated:
[T]his Court’s imposition of a permanent injunction comports with the procedure outlined in § 27-19-102, MCA. Defendants have a clear general duty (as do we all) not to damage the property of another. See § 28-1-201, MCA. Under the unique facts of this case, the Defendants continued use of flood irrigation upon their field clearly results in immediate, irreparable, and substantial harm to the Plaintiffs’ home.
¶20 Clearly, the District Court entered a general finding in its October 4,2000, Order determining that the Youngs breached the duty imposed upon them by § 28-1-201, MCA. In the face of this general finding, however, the District Court also entered specific findings and conclusions that the Youngs: (1) did not trespass, pursuant to § 85-7-2212(2), MCA, (2) did not create a nuisance, pursuant to § 27-30-101(3), MCA, and (3) conformed to the applicable standard of care required of them. This leads us to the inescapable conclusion that the District Court’s general finding that the Youngs breached the duty imposed by § 28-1-201, MCA, conflicts with its more specific findings and conclusions. We have previously held that when a general finding is inconsistent with a specific finding, the general finding will be rejected. Brubaker v. D’Orazi (1947), 120 Mont. 22, 30-31, 179 P.2d 538, 542. Also see Section 1-3-225, MCA. Hence, we must reject the District Court’s general finding that the Youngs breached § 28-1-201, MCA. We conclude, rather, that the District Court abused its discretion when it imposed a permanent injunction pursuant to § 27-19-102, MCA, since the District Court entered specific findings and conclusions that the Youngs’ irrigation practices were lawful and were not negligently performed.
¶21 We now turn to the question of whether the District Court abused its discretion, as a matter of equity, when it enjoined flood irrigation practices on the Youngs’ property. The Youngs contend that equity follows the law. The Youngs thus argue that, as a matter of equity, a finding of wrongful activity or the breach of an obligation is a prerequisite to the imposition of a permanent injunction since such a finding is required by § 27-19-102, MCA. The Youngs assert that the District Court abused its discretion when it permanently enjoined their lawful irrigation practices.
¶22 The Wells argue that the injunction was entirely appropriate *426 under the circumstances. They assert that the District Court correctly relied upon our holding in Madison Fork for the proposition that a court sitting in equity may enjoin conduct causing irreparable harm, which may be protected in some respects, if the equities of the particular case warrant injunctive relief. The Wells claim that the equities in this case, as properly balanced between the parties by the court, warrant injunctive relief. Specifically, the Wells claim that the equities clearly favor them since they will sustain substantial damages to their home if the Youngs’ flood irrigation practices, which net the Youngs only nominal revenues, are allowed to continue.
¶23 We have held that equity follows the law. See First National Bank of Twin Bridges v. Sant (1973), 161 Mont. 376, 383, 506 P.2d 835, 840. We stated in Nelson v. Wilson (1928), 81 Mont. 560, 264 P. 679, 683, that:
Indeed, law and equity do not clash. In many cases they are commingled, administered together, and the rules of each have a place. Any idea that the law judges in defiance of equity and that equity is not bound by the law is erroneous. 2 Cooley’s Blackstone (4th Ed.) 430. While this case is a suit in equity, brought to obtain equitable relief, in it the law must be invoked to determine what rules govern transactions ... so that both law and equity must be regarded.
¶24 The cases cited by the Wells, wherein a permanent injunction was imposed, follow the principle that equity follows the law. Prior to the imposition of an injunction in those cases, wrongful conduct or the breach of an obligation were expressly identified. See Jefferson v. Big Horn County, 2000 MT 163, ¶ 17 and ¶ 28, 300 Mont. 284, ¶ 17 and ¶ 28, 4 P.3d 26, ¶ 17 and ¶ 28 (injunction enjoining government’s unlawful imposition of tax vacated after change in law); Engel v. Gampp, 2000 MT 17, ¶ 58, 298 Mont. 116, ¶ 58, 993 P.2d 701, ¶ 58 (encroachment of ditch right in violation of § 70-17-112, MCA, enjoined); Ducham v. Tuma (1994), 265 Mont. 436, 442-443, 877 P.2d 1002, 1006-1007 (activity constituting trespass enjoined); and Butler v. Germann (1991), 251 Mont. 107, 115, 822 P.2d 1067, 1072 (encroachment of ditch right in violation of § 70-17-112, MCA, enjoined).
¶25 Moreover, our decision in Madison Fork is distinguishable. The parties in Madison Fork entered into a contract whereby L & B Lodge Pole Timber Products (“L & B”) was allowed to cut beetle infested timber on the Madison Fork Ranch (“the Ranch”). Thereafter, L & B cut both beetle infested trees and uninfected trees. The Ranch subsequently notified L & B that they considered the contract *427 terminated as a result of L & B’s failure to perform according to the contract terms. The Ranch filed suit and the trial court issued a temporary restraining order precluding further harvesting of timber on the Ranch. After a hearing, the court vacated the temporary restraining order. Shortly thereafter, L & B logged an additional 15 to 25 acres, including infested and uninfected timber. Madison Fork, 189 Mont. at 297, 615 P.2d at 903.
¶26 Following a trial, the trial court found that L & B “failed and refused to perform certain obligations under the contract” and concluded that L & B breached the contract. Madison Fork, 189 Mont. at 298, 615 P.2d at 904. The trial court held that an injunction was proper because the destruction and threatened future destruction of the standing timber could not be remedied by an action at law. Madison Fork, 189 Mont. at 298, 615 P.2d at 904. On appeal, we held that the trial court did not abuse its discretion when it imposed a permanent injunction enjoining L & B from harvesting both infested and uninfected timber since L & B breached the terms of the contract. Madison Fork, 189 Mont. at 302, 615 P.2d at 906. Further, we held that the injunction was warranted because L & B entered the Ranch and continued to cut both infested and uninfected timber after receiving notification of termination of the contract. Madison Fork, 189 Mont. at 302, 615 P.2d at 906.
¶27 Unlike Madison Fork, the District Court in this case entered no specific findings that the Youngs’ conduct was unlawful or that they breached an obligation. Rather, the District Court specifically determined that the Youngs’ conduct was lawful and that the “most plausible and credible explanation” of the flooding experienced by the Wells resulted from an abandoned BIA ditch. Therefore, based on the particular facts of this case, we conclude that the District Court abused its discretion, as a matter of equity, when it permanently enjoined flood irrigation practices on the Youngs’ property. Accordingly, we reverse the District Court’s imposition of a permanent injunction in this case.
¶28 In passing, we note that the District Court concluded that § 85-7-2212(2), MCA, does not prohibit injunctive relief. Although we agree that there may be circumstances where injunctive relief may be allowed, they do not exist here. For example, if an injured party acquired property before the water seepage existed or began, or the seepage contained toxic chemicals, injunctive relief may be appropriate. See Section 85-7-2212(2), MCA. In the matter before us, however, the District Court found that the Youngs and their predecessors irrigated the property many years before the Wells *428 purchased their adjacent homesite. There is likewise no evidence in the record to suggest that the seepage here contained toxic chemicals. Under the facts presented here, and as determined by the District Court, we conclude that the court abused its discretion in issuing the injunction.
¶29 Reversed.
CHIEF JUSTICE GRAY and JUSTICE NELSON and DISTRICT JUDGE MACEK, sitting for JUSTICE COTTER concur.